IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2019 NOV 25 P 2:21
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Kevin McCorkle, | ) |
| Plaintiff. | ) Civil Action No.: 3:19-CV-931 |
| vs. | ) JURY TRIAL DEMANDED |
| Russell County Community Hospital, LLC. d/b/a Jack Hughston Memorial Hospital., | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Kevin McCorkle, ("Plaintiff") by and through his undersigned counsel, and hereby files this Complaint against Russell County Community Hospital, LLC d/b/a Jack Hughston Memorial Hospital ("Defendant") and seeks redress for discrimination and retaliation suffered in Plaintiff's capacity as an employee of the Defendant. Plaintiff has been discriminated against by the Defendant on account of Plaintiff's disability in violation of the Americans with Disabilities Act, **42 U.S.C. §§ 12101** *et seq*. and retaliated against in violation of the Family and Medical Leave Act, **29 U.S.C. §§ 2601** *et seq*, and any other cause(s) of action that can be inferred from the facts set forth herein and states the follows:

### JURISDICTION AND VENUE

1

1. The jurisdiction of this this Court is invoked pursuant to 28 U.S.C . § 1331 because this action arises under the laws of the United States, 29 U.S.C. § 2617 (a)(2) because the action arises under the FMLA and 42 U.S.C. § 12117(a) because the action arises under the ADA.

2. The unlawful employment acts alleged herein took place within the Eastern Division of the Middle District of Alabama.

3. Venue is proper in this Court, The United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C § 1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

## PARTIES

4. Plaintiff Kevin McCorkle is domiciled in the State of Alabama.

5. At all relevant times the Plaintiff was an "employee" of the Defendant.

6. The Defendant Jack Hughston Memorial Hospital is a domestic limited liability company doing business at 4401 Riverchase Dr, Phenix City, AL 36867.

7. At all relevant times, Defendant was an "employer."

## COMPLIANCE WITH THE JURISDICTIONAL REQUIREMENTS

8. Plaintiff has complied with the jurisdictional requirements on to wit: that on or about February 25, 2019, Plaintiff caused a charge of discrimination in employment to be filed with the Equal Employment Opportunity Commission.

9. A Notification of a Right to Sue Letter was received and this Complaint has been filed within ninety (90) days of receipt of said Notification of Right to Sue. A copy of the Notice is attached as Exhibit 1.

## **GENERAL FACTS**

10. Plaintiff began working for the Defendant in February of 2016 as a nurse in the Emergency Room.

11. On or about the night of July 21, 2018 the Plaintiff suffered an issue with his radial nerve which caused his right hand to be paralyzed.

12. On or about July 23, 2018 Plaintiff informed Heather Weihl, the Human Resources Coordinator, of the issue with his right hand, and discussed taking FMLA.

13. On July 27, 2018 Plaintiff filed for FMLA leave due to his right hand and on July 27, 2018 FMLA leave was granted.

14. Plaintiff was on FMLA for three months and during this time received physical therapy to return function to his right hand.

15. While the Plaintiff was out on FMLA, Claudine Bramlett the Human Resources manager informed the Plaintiff that he could not return to work until his hand was "100%."

3

16. On September 28, 2018 Plaintiff received notice from his doctor that he could return to work on October 1, 2018 with a reasonable accommodation to work as tolerated.

17. Plaintiff then informed Ms. Bramlett that he would be able to return to work, and perform his essential job functions, starting on October 1, 2018.

18. Plaintiff had numerous conversations with Ms. Bramlett between September 28, 2018 and October 15, 2018 about returning to work where she repeatedly denied his request.

19. On October 15, 2018 Ms. Bramlett finally begrudgingly allowed Plaintiff to return to work.

20. On October 15, 2018 Caroline Gibson, Plaintiff's direct supervisor, was called into HR and was told by Ms. Bramlett that "Kevin was on her radar and that he would be handled."

21. When Plaintiff returned to work it was with an accommodation to do everything possible that his hand would allow, and if any issues arose, he would inform his supervisor and/or Ms. Bramlett.

22. At this point Plaintiff re-trained for one week under his supervisor Erika Hare and was able to perform his essential job functions.

23. After the one-week re-training period Plaintiff was put back on night shift.

24. Plaintiff worked a night shift the night of November 18, 2018 that ran into the morning of November 19, 2018,

25. Plaintiff was also scheduled to work a night shift the night of November 19, 2018.

26. After his shift ended Plaintiff went home and was sleeping in preparation for his next shift when he began receiving text messages, phone calls, and emails from HR.

27. Plaintiff called HR back as soon as he noticed the messages.

28. He spoke to "Brittany" in HR and was told that Ms. Bramlett wanted him to come to HR immediately and that his shift for that night would be covered.

29. Plaintiff got dressed and began to make his way to the Hospital.

30. On his way to the Hospital he stopped for gas and text Ms. Bramlett to apologize for missing her call and let her know that he was on the way.

31. She replied "So sorry. No emergency give me a call when you get up. Thanks."

32. At this point the Plaintiff turned around to return home.

33. On or about November 20, 2018 Plaintiff received an email from Ms. Bramlett to his personal email, which is not checked often, and it was not customary for Ms. Bramlett to send emails to his personal email account.

34. The email stated that he needed to schedule a meeting with Ms. Bramlett and that he could not return to work until the meeting took place.

35. Due to not checking his personal email often, Plaintiff did not see the email until November 28, 2018.

36. Around November 24, 2018 Caroline Gibson was asked to write up Plaintiff by Claudine Bramlett.

37. Ms. Gibson was told by Claudine Bramlett to write him up for stealing drugs.

38. Ms. Gibson denied doing so because there was no proof that Plaintiff did such acts.

39. On or about November 25, 2018 Plaintiff noticed that he had been locked out of the schedule portal by the administrator.

40. Due to this Plaintiff was unable to see when he was scheduled to work.

41. On November 26, 2018, Plaintiff was terminated.

42. The reason given was that Plaintiff was a no-show no call.

43. However, this was a pretextual reason for his termination based on his disability or perceived disability.

## COUNT I

### Violation of The Americans With Disabilities Act

44. Plaintiff repeats and realleges paragraphs 1-43 as if set forth in full herein.

45. Plaintiff is a qualified individual with a disability which affects major life activities.

46. Plaintiff was able to perform all the essential functions of his job with reasonable accommodations.

47. Specifically, Plaintiff was diagnosed with posterior interosseous nerve palsy.

48. This condition caused Plaintiff to temporarily lose all feeling in his right arm.

49. Plaintiff, through physical therapy, was able to regain feeling in his right arm and return to work with a reasonable accommodation.

50. Plaintiff was able to do all essential job functions as a nurse.

51. Upon Plaintiff's return Caroline Gibson was called into Ms. Bramlett's HR office and was told that "Kevin was on her radar and that he would be handled."

52. Plaintiff, to his understanding, was terminated by Claudine Bramlett on November 26, 2018 shortly after his return to work.

53. Defendant denied Plaintiff's employment based on Plaintiff's disability or its perception of Plaintiff's disability.

54. Defendant has discriminated against Plaintiff because of his disability and/or his perception of his disability by terminating his employment in violation of The Americans with Disability Act.

55. Plaintiff has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful discrimination.

WHEREFORE, Plaintiff prays that this Honorable Court will:

a. Issue a declaratory judgment, declaring the defendants past practices herein to be unlawful.

b. Order Defendant to institute and carry out polices, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicate the effects of its past and present unlawful employment practices.

c. Order the Defendant to make whole the Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of Defendants unlawful employment practices.

d. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial.

e. Order Defendant to pay Plaintiff punitive damages for its malice or reckless indifference to Plaintiff's federally protected rights described above, in amounts to be determined at trial.

f. Grant such further relief as the Court deems necessary and proper.

## COUNT II

## Retaliation Under The American's With Disability Act

56. Plaintiff repeats and realleges paragraphs 1-43 as if set forth in full herein.

57. Upon returning to work on October 15, 2019 Plaintiff was under a reasonable accommodation.

58. The reasonable accommodation was to do everything possible that his hand would allow, and if any issues arose, he would inform his supervisor and/or Ms. Bramlett.

59. Shortly after his return and request for accommodation Ms. Bramlett called Caroline Gibson into her HR office and told her that "Kevin was on her radar and that he would be handled."

60. Caroline Gibson took this as Ms. Bramlett meaning she was looking for a reason to terminate Plaintiff due to his disability and accommodation.

61. Plaintiff, to his understanding, was terminated by Claudine Bramlett on November 26, 2018 about one month after his return to work with a reasonable accommodation giving a causal connection between the adverse employment action or events and the protected activity.

62. By engaging in the conduct described above in paragraphs 59, 60, 61 Defendant unlawfully retaliated against Plaintiff because he requested an accommodation for his disability in violation of the ADA.

63. Plaintiff has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful discrimination.

WHEREFORE, Plaintiff prays that this Honorable Court will:

a. Issue a declaratory judgment, declaring the defendants past practices herein to be unlawful.

b. Order Defendant to institute and carry out polices, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicate the effects of its past and present unlawful employment practices.

c. Order the Defendant to make whole the Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of Defendants unlawful employment practices.

d. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial.

e. Order Defendant to pay Plaintiff punitive damages for its malice or reckless indifference to Plaintiff's federally protected rights described above, in amounts to be determined at trial.

f. Grant such further relief as the Court deems necessary and proper.

## ALTERNATIVE-COUNT III

## FMLA Retaliation

64. Plaintiff repeats and realleges paragraphs 1-43 as if set forth in full herein.

65. On or about July 27, 2018 Plaintiff's FMLA leave was granted.

66. On or about September 28, 2018 Plaintiff's doctor cleared him to return to work on October 1, 2018 with a reasonable accommodation.

67. However, between September 28, 2018 and October 15, 2018 Ms. Bramlett would not allow Plaintiff to return to work.

68. When he was finally allowed to return Ms. Bramlett called Caroline Gibson in her HR office and stated, "Kevin was on her radar and that he would be handled."

69. Plaintiff was terminated, based on his understanding, by Claudine Bramlett on November 26, 2018 shortly after his return to work.

70. None of the adverse employment actions and/or events described in paragraphs 67, 68, 69 of this Complaint occurred until after Plaintiff was out

on FMLA leave giving a causal connection between the adverse employment action or events and the protected activity.

71. Plaintiff has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful discrimination.

WHEREFORE, Plaintiff prays that this Honorable Court will:

a. Issue a declaratory judgment, declaring the defendants past practices herein to be unlawful.

b. Order Defendant to institute and carry out polices, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicate the effects of its past and present unlawful employment practices.

c. Order the Defendant to make whole the Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of Defendants unlawful employment practices.

d. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to

emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial.

e. Order Defendant to pay Plaintiff punitive damages for its malice or reckless indifference to Plaintiff's federally protected rights described above, in amounts to be determined at trial.

f. Grant such further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands trial by jury.

Respectfully submitted,

D. Jeremy Schatz
ASB-2400-H34Y
*Attorney for Plaintiff*

OF COUNSEL:
The Patton Firm
3720 4th Avenue South
Birmingham, AL 35222
Phone: (205) 933-8953
Fax: (205) 449-4897
jschatz@thepattonfirmal.com

## CLERK: PLEASE SERVE VIA CERTIFIED MAIL:

Russell County Community Hospital, LLC
d/b/a Jack Hughston Memorial Hospital
C/O CSC-Lawyers Incorporating SVC INC
150 S Perry St
Montgomery, AL 36104